IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ANNETTE PARKER, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> DELMAR GARDENS OF LENEXA, INC. ) <br> dba Garden Villas of Lenexa, ) <br> ) <br> Defendant. ) <br> ) | Case No. 16-2169-JWL-GEB |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff's Motion to Quash Subpoena and for Protective Order (**ECF No. 35**). For the reasons set forth below, Plaintiff's motion is **DENIED**.

I.     **Background**[1]

    A.     **Nature of the Case**

Plaintiff Annette Parker is an African-American woman who was employed by defendant Delmar Gardens from June 1989 through November 17, 2015, as a dietary aide. Plaintiff's first fifteen years of employment passed without issue, until she first reported in July 2015 to the Administrator that the Caucasian evening employees were

---

[1] The information recited in this section is taken from the pleadings (Compls., ECF No. 1, 27; Answers, ECF Nos. 21, 28), the briefs regarding Plaintiff's Motion to Quash (ECF Nos. 35, 36, 42, 47); and the Memorandum and Order on Defendants' Motion to Dismiss (ECF No. 15). This background information should not be construed as judicial findings or factual determinations.

not cleaning properly and ensuring sufficient supplies. No action was taken on this report. Then, in September 2015, Plaintiff reported repeated incidences of sexual harassment by another employee. According to Plaintiff, Defendant failed to follow-up on her report. After Plaintiff's internal complaint, she received a disciplinary write-up for issues which allegedly occurred prior to her report of the harassment. Plaintiff then made a formal charge of sexual harassment, sex discrimination, and retaliation to the Equal Employment Opportunity Commission ("EEOC").

After Plaintiff's charge to the EEOC, Defendant advised her that a resident complained about a meal, assumedly related to her position as a dietary aide. As a result, on November 10, 2015, Defendant suspended Plaintiff's employment and terminated her one week later.

Plaintiff brought this action against her former employer, claiming her termination was the result of discrimination on the basis of her sex and race, and/or in retaliation for engaging in protected activity under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. She also claims Defendant terminated her and unfairly disciplined her on the basis of her race and/or in retaliation for complaining about race discrimination in violation of 42 U.S.C. § 1981. Plaintiff seeks economic damages, including back-pay and front-pay, as well as compensatory damages for emotional distress, and punitive damages.

On Defendant's motion, the Court dismissed Plaintiff's Title VII termination claims, but permitted her Title VII discrimination claims based on the September 2015

disciplinary write-ups to proceed, along with her § 1981 claims (*see* Mem. and Order, ECF No. 15).

B.  **Procedural Posture**

Plaintiff filed this lawsuit on March 15, 2016 (ECF No. 1), and after resolution of its Motion to Dismiss, Defendants timely filed an Answer (ECF No. 21). A Scheduling Order was entered, establishing an initial discovery deadline of April 7, 2017 (ECF No. 23). After resolution of the dispositive motion and initial scheduling, both pleadings were amended (ECF Nos. 27, 28) and the parties agreed to revisions to the schedule (ECF No. 49). At the parties' joint request (ECF No. 54), due to the schedules of the attorneys, parties, and witnesses, the Court recently extended the discovery deadline to May 24, 2017 (ECF No. 56).

II.  **Motion to Quash and for Protective Order (ECF No. 35)**

On December 13, 2016, Defendant served Plaintiff with notice of its intent to serve a subpoena duces tecum on Plaintiff's former employer, Sunrise Senior Living Services, Inc. ("Sunrise"), for whom she worked after her employment by Defendant.[2] This initial subpoena was served on Sunrise at its corporate headquarters in the Eastern[3] District of Virginia, and although the parties discussed Plaintiff's objections to that

---

[2] Pl.'s Mot., ECF No. 35, Ex. A.
[3] The parties' briefing suggests the out-of-state subpoena was served in the Northern District of Virginia. However, there is no "Northern" District of the U.S. District Court in Virginia. Based upon the McLean, Virginia address shown on the subpoena, the Court assumes the subpoena was served in the Eastern District of Virginia.

subpoena, no formal objection was filed in Virginia. The status of any information gained as a result of the Virginia subpoena is unknown.

On January 5, 2017, Defendant notified Plaintiff of its intent to serve an identical subpoena on the same previous employer (albeit a slightly different name, Brighton Gardens Sunrise Senior Living) at its business address within the District of Kansas.[4] The Kansas subpoena has not been served. After conferring as required by D. Kan. Rule 37.2,[5] the parties could not resolve their disagreements regarding the subpoena, leading to the instant motion.

### A. Request at Issue

The subpoena to Sunrise seeks: "All employment records for Annette Parker, including but not limited to her job application, job duties description, benefit records, payroll records, attendance/absenteeism, [and] termination."

### B. Positions of the Parties

Plaintiff does not dispute her income records, for the time period since her termination by Defendant, are relevant to her claimed economic damages and her attempts to mitigate those damages. She insists she produced all of the paystubs in her possession from Sunrise, and will produce her IRS Form W-2 when issued.[6] Although she makes arguments regarding income information from her current employer, this

---

[4] *Id*. at Ex. C.
[5] *See* Pl.'s Certif. of Compliance, ECF No. 35-2, Ex. B.
[6] At the time of the filing of Plaintiff's Reply brief In January 2017, she was waiting to receive her W-2.

employer does not appear to be either the subject of the disputed subpoena or a topic of the current motion.

Plaintiff asserts the subpoena is overly broad and seeks information which is speculative or inadmissible. Plaintiff argues Defendant has no basis to claim she has failed to mitigate her damages, and thus should not be permitted to go on a fishing expedition through her confidential employment records. She contends she either has already, or can, provide relevant information herself, without a subpoena to her employer. She cites to the 2012 District of Kansas opinion of *Herrera v. Easygates, LLC*,[7] (discussed below) for the proposition that she should be provided an opportunity to produce the information voluntarily, rather than through a subpoena.

Conversely, Defendant claims all the information it seeks is relevant. Although Plaintiff agreed to produce certain income records, these are not the only documents relevant to its defenses. Due to Plaintiff's duty to mitigate damages and her claims of emotional distress, Plaintiff has placed both her income and her emotional health at issue. Defendant argues her employment records may show the reasons for her separation from Sunrise, which would demonstrate her ultimate efforts to maintain employment and thus mitigate her damages. Additionally, her attendance records and statements to her subsequent employer could establish her emotional health, while other statements—such as those made in her employment application—could weigh on her credibility.

Although Plaintiff relies in large part on her willingness to produce information, Defendant claims she has only produced a portion of her W-2's from Sunrise, nothing

---

[7] No. 11-CV-2558-EFM-GLR, 2012 WL 5289663, at *1 (D. Kan. Oct. 23, 2012).

from her current employer, and she refuses to authorize access to tax records. Defendant suggests her lack of production strengthens its position—if Plaintiff will not produce wage records, Defendant should not be forced to rely upon her to produce other documents. Defendant argues the confidentiality of her employment records is protected by the Protective Order filed in this case.[8]

### C. Legal Standards

Plaintiff's request to quash the non-party subpoena and issue a protective order implicates two primary Federal Rules of Civil Procedure: Rule 45 and Rule 26. Each rule is addressed in turn.

#### 1. Fed. R. Civ. P. 45

Fed. R. Civ. P. 45 provides guidelines for the issuance of subpoenas to non-parties. Rule 45(d)(3)(A) requires the court to quash or modify a subpoena that requires disclosure of privileged or protected information or subjects a person to undue burden. Although Rule 45 does not specifically include relevance or overbreadth as bases to quash a subpoena, "this court has long recognized that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26(b) and Rule 34."[9]

---

[8] *See* Protective Order, ECF No. 20.
[9] *Martinelli v. Petland, Inc.,* No. 10-mc-407-RDR, 2010 WL 3947526, at *3 (D. Kan. Oct. 7, 2010) (internal citations omitted); *Martin v. Grp. 1 Realty, Inc.*, No. 12-2214-EFM-DJW, 2013 WL 3322318, at *2 (D. Kan. July 1, 2013).

## 2. Fed. R. Civ. P. 26

Rule 26(b)(1) permits discovery of "any non-privileged matter that is relevant to any party's claim or defense." Relevance, at discovery, is broad,[10] and does not mean the information obtained would necessarily be admitted at trial. If the party seeking discovery meets its initial, minimal burden to demonstrate its request is relevant on its face,[11] the resisting party cannot rely upon a conclusory statement that the requested discovery is irrelevant.[12] It "must either demonstrate the discovery sought does not come within the broad scope of relevance defined in Rule 26(b)(1), or that it is of such marginal relevance that the potential harm caused by the discovery would outweigh the presumption in favor of broad disclosure."[13] "Courts should lean towards resolving doubt over relevance in favor of discovery,"[14] and the court has broad discretion over discovery matters and to decide when a protective order is appropriate.[15]

---

[10] *See Speed Trac Techs., Inc. v. Estes Exp. Lines, Inc.*, No. 08-212-KHV, 2008 WL 2309011 at *3 (D. Kan. June 3, 2008).
[11] *Speed Trac*, 2008 WL 2309011, at *2 (citing *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.,* No. 05–2164-MLB-DWB, 2007 WL 2122437, at *4 (D. Kan. July 20, 2007).
[12] *XPO Logistics Freight*, No. 16-MC-224-CM-TJJ, 2016 WL 6996275, at *4 (citing *Speed Trac*, 2008 WL 2309011, at *3).
[13] *Id*.
[14] *Folger v. Medicalodges, Inc.*, No. 13-1203-MLB-KMH, 2013 WL 6244155, at *2 (D. Kan. Dec. 3, 2013) (citing *Jackson v. Coach, Inc.*, No. 07–2128–JTM–DWB, 2008 WL 782635, at *4 (D. Kan. Mar. 20, 2008); *Teichgraeber v. Mem'l Union Corp. of Emporia State Univ.*, 932 F. Supp. 1263, 1266 (D. Kan. 1996)).
[15] *See S.E.C. v. Merrill Scott & Assoc., Ltd.*, 600 F.3d 1262, 1271 (10th Cir. 2010) ("The district court has broad discretion over the control of discovery ...") (internal citations omitted); *Layne Christensen Co. v. Purolite Co.*, 271 F.R.D. 240, 244 (D. Kan. 2010) ("Federal Rule of Civil Procedure 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required.") (quoting *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 36 (1984)).

Additionally, under Rule 26(b), the scope of discovery must be "proportional 'to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.'"[16] "A subpoena that seeks irrelevant, overly broad, or duplicative discovery causes undue burden, and the trial court may quash it on those bases."[17]

Rule 26(c) allows the court, for good cause, to issue an order to protect a party from annoyance, embarrassment, oppression, or undue burden or expense. The Court then has broad discretion to utilize such a protective order to specifically define and/or narrow the disclosure or discovery, including the terms, timing, and method of discovery.[18]

### D. Discussion

Plaintiff supports her arguments with a single case from this district and opinions from other jurisdictions. She relies on large part on *Herrera v. Easygates, LLC*,[19] a District of Kansas case in which the plaintiff sued his former employers for race discrimination, harassment, and retaliation.

---

[16] *Gilbert v. Rare Moon Media, LLC*, No. 15-MC-217-CM, 2016 WL 141635, at *4 (D. Kan. Jan. 12, 2016) (citing Fed. R. Civ. P. 26(b)).
[17] *Rare Moon,* 2016 WL 141635, at *4 (citing *Heartland Surgical Specialty Hosp.,* 2007 WL 2122437, at *5).
[18] Fed. R. Civ. P. 26(c)(1)(A)-(H).
[19] No. 11-CV-2558-EFM-GLR, 2012 WL 5289663, at *1 (D. Kan. Oct. 23, 2012).

In *Herrera*, the defendants intended to serve Herrera's current employer with a subpoena for personnel records, and he sought a protective order from the court. He agreed to provide copies of W–2 and other pay records and to authorize defendant to obtain copies of his relevant tax records, but objected to the subpoena of his employer. Defendant argued the information sought was relevant to mitigation of damages and credibility of the plaintiff. In its ruling, the court focused on the inherent potential for abuse when requesting information from a current employer, but also found the subpoena overly broad and primarily seeking irrelevant documents. The court found "alternate sources for obtaining the admitted relevant information provide good cause to protect Plaintiff against discovery of the same information from his current employer" and granted plaintiff's motion to quash.[20] Herrera was permitted to produce his resume and employment application directly to defendants; but if he failed to do so, the court would consider further whether a subpoena would be permitted.[21] Although the court barred the subpoena to the current employer, it did find the information sought was relevant to both Herrera's mitigation of damages and his credibility—but "discoverable through a lesser intrusive means than"[22] the current employer.

Although *Herrera* is persuasive, it actually cuts both ways for this case. The court found the information could be obtained in a less intrusive manner than through subpoena, which supports Plaintiff's position. But in *Herrera*, a *current* employer—not a former employer—faced subpoena, and the court did find the information relevant; both

---

[20] *Id*. at *2.
[21] *Id*. at *3.
[22] *Id*.

9

facts which support Defendant's position. Despite both parties analyzing *Herrera* and other out-of-district opinions to support their arguments, they fail to recognize additional caselaw from this district, which permits subpoenas to both current and former employers in employment discrimination cases.

For example, in *Kear v. Kohl's Dep't Stores, Inc.*,[23] the defendant intended to issue a subpoena to plaintiff's current employer, seeking "any and all documents relating to" plaintiff, including employment records, performance evaluations, promotions, job applications, and income information. Although the court was "sympathetic to [p]laintiff's concerns regarding the harassment factor" of a subpoena to a current employer, the court allowed the subpoena, finding that potential annoyance to the plaintiff did not outweigh the defendant's showing of obvious relevance of the information requested.[24]

Following the *Kear* decision, in *Martin v. Grp. 1 Realty, Inc.*,[25] the court was confronted with a motion for a protective order from subpoenas to the plaintiff's current and former employers. The court analyzed "[t]wo recent workplace discrimination cases from this District [finding] subpoenas seeking a plaintiff's employment records from a former employer to be both relevant and appropriate."[26] First, in *Harroald v. Triumph*

---

[23] *Kear v. Kohl's Dep't Stores, Inc.*, No. 12-1235-JAR-KGG, 2013 WL 628331 (D. Kan. Feb. 20, 2013), *upheld on review in* 2013 WL 1819777 (D. Kan. Apr. 30, 2013).
[24] *Id*. at *2-3.
[25] *Martin v. Grp. 1 Realty, Inc.*, No. 12-2214-EFM-DJW, 2013 WL 3322318, at *3 (D. Kan. July 1, 2013).
[26] *Id.* at *3 (D. Kan. July 1, 2013) (citing *Harroald v. Triumph Structure–Wichita, Inc.*, No. 10–1281–JAR–KGG, 2011 WL 2118648, at *3 (D. Kan. May 27, 2011); *Gilkey v. ADT Sec. Servs., Inc.*, No. 11–1369–JAR–KGG, 2012 WL 3143872, at *6 (D. Kan. Aug. 2, 2012)).

*Structure–Wichita, Inc.*,[27] the court found that given the nature of the claims and defenses raised by the parties—including the plaintiff's requests for medical expenses and pain and suffering—the documents requested in the subpoenas to former employers met "the broad and liberal construction afforded by the federal discovery rules."[28] The *Harroald* court found the requests to be "more or less standard in the context of employment discrimination claims brought in this District."[29]

Later, in *Gilkey v. ADT Security Services, Inc.*,[30] the plaintiff moved to quash a subpoena to his former employer. The court denied the motion, finding the information relevant and discoverable to plaintiff's claims, including his request for "intangible injuries," and to the after-acquired evidence defense raised by the defendant.[31]

After review of both *Harraold* and *Gilkey*, the court in *Martin* denied the plaintiff's motion for protective order, but modified the subpoenas to include only those types of documents it found truly relevant to the parties' claims and defenses, including: performance evaluations; discipline and discharge information; attendance information; documents related to any work-related injury; and any allegations, charges or complaints by or against the plaintiff[32]—topics quite similar to those sought by Defendant in this case.

---

[27] *Harroald*, 2011 WL 2118648, at *3.
[28] *Martin*, No. 12-2214-EFM-DJW, 2013 WL 3322318, at *3 (citing *Harroald*, 2011 WL 2118648, at *3).
[29] *Id*. (citing *Harroald*, 2011 WL 2118648, at *3).
[30] *Gilkey*, 2012 WL 3143872, at *6.
[31] *Martin*, 2013 WL 3322318, at *3 (citing *Gilkey*, 2012 WL 3143872, at *6).
[32] *Id*. at *6.

In the above-described cases and others, courts in this District have determined that conclusory claims of annoyance, harassment, and embarrassment are not sufficient to satisfy an objecting party's burden when seeking a protective order under Rule 26(c).[33] And while the bulk of caselaw from this District acknowledges the potential abuse arising from subpoenas to employers, when weighing the potential for abuse, courts tend to resolve the issue on the side of the broad nature of discovery, and the concept that information is not required to be *admissible* at trial to be *discoverable*.

Most importantly, when defending Plaintiff's claim for damages, the "defendant-employer bears the burden of showing that the plaintiff failed to mitigate" her damages.[34] In doing so, courts in this district have found a plaintiff's "failure to search for alternative work, [her] refusal to accept substantially equivalent employment, or [her] voluntary quitting of alternative employment without good cause constitute affirmative defenses to backpay liability."[35] Therefore, any information tending to demonstrate Plaintiff's efforts to obtain or maintain similar employment appears relevant to Defendant's burden of proof at trial. Because discovery is broad, and the Court should resolve doubt over relevance in favor of discovery, the Court finds the subpoena seeks information relevant on its face.

---

[33] *See, e.g.*, *Stewart v. Mitchell Transp.*, No. 01-2546-JWL-DJW, 2002 WL 1558210, at *6 (D. Kan. July 11, 2002) (finding defendant's conclusory statements that plaintiffs seek to annoy, harass, and embarrass him through the subpoenas were insufficient to satisfy his Rule 26(c) burden).

[34] *Leidel v. Ameripride Servs., Inc.*, 276 F. Supp. 2d 1138, 1142 (D. Kan. 2003).

[35] *Id.* (citing *Volkman v. United Transportation Union,* 826 F. Supp. 1253, 1258 (D. Kan. 1993)).

Plaintiff contends her personnel files and employment records are confidential and should be protected from "wide dissemination."[36] This Court does not disagree with the sensitivity and confidentiality of the records. However, Plaintiff's argument is incomplete. It is well-established that confidentiality of information does not equate to a privilege against its production.[37] Here, a Protective Order is already in place which specifically protects "any and all financial and employment records"[38] produced in this litigation, thereby preventing the distribution of Plaintiff's private and personal information.

E. Conclusion

Because the information sought by Defendant's intended subpoena appears, on its face, to be relevant to Plaintiff's mitigation of damages and her claim of emotional distress, the Court finds the request meets the broad definition of relevance under Rule 26(b). Moreover, Plaintiff's objections regarding confidentiality do not meet the standard of "good cause" for a protective order under Rule 26(c). Because any sensitive information which may be produced is already protected by the current Protective Order, Plaintiff's confidentiality objections are overruled. Plaintiff's motion to quash is denied,

---

[36] Pl.'s Mot., ECF No. 35, at 3 (citing *Porter v. Farmers Ins. Co., Inc.,* No. 10-116-GKF (N.D. Okla. Apr. 25, 2011) (citing *Williams v. Board of County Comm'rs,* No. 98-2485-JTM (D. Kan. Jan. 21, 2000)).

[37] *See, e.g.*, *E.E.O.C. v. Thorman & Wright Corp.*, 243 F.R.D. 426, 430 (D. Kan. 2007) (noting "as this Court has previously held, 'a concern for protecting confidentiality does not equate to privilege'") (citing *DIRECTV, Inc. v. Puccinelli,* 224 F.R.D. 677, 682 (D. Kan. 2004); *Sonnino v. Univ. of Kan. Hosp. Auth.,* 220 F.R.D. 633, 642 (D. Kan. 2004)).

[38] Protective Order, ECF No. 20, at 1, ¶ A.

and Defendant is permitted to serve its subpoena on Plaintiff's former employer to gain information about her employment with Sunrise since her termination by Defendant.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Quash Subpoena and for Protective Order (ECF No. 35) is **DENIED**.

**IT IS SO ORDERED.**

Dated at Wichita, Kansas this 2nd day of May 2017.

s/ Gwynne E. Birzer  
GWYNNE E. BIRZER  
United States Magistrate Judge