# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF KANSAS

Annette Parker,

      Plaintiff,

v.                                                              Case No. 16-cv-2169-JWL

Delmar Gardens of Lenexa, Inc.
d/b/a Garden Villas of Lenexa,

      Defendant.

## MEMORANDUM & ORDER

Plaintiff filed this lawsuit against her former employer alleging that defendant terminated her employment in retaliation for engaging in protected activity in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. She further alleges that defendant terminated her employment in retaliation for complaining about race discrimination in violation of 42 U.S.C. § 1981. This matter is presently before the court on defendant's motion for summary judgment (doc. 67). As will be explained, the motion is granted in part, denied in part and moot in part.[1]

**I.**     **Facts**

---

[1] Plaintiff initially asserted claims of sex discrimination under Title VII and claims of race discrimination under Title VII and § 1981. Although defendant moved for summary judgment on those claims, the parties stipulated to the dismissal of those claims shortly after the filing of defendant's motion. That portion of defendant's motion, then, is moot.

The following facts are uncontroverted, stipulated in the pretrial order, or related in the light most favorable to plaintiff as the nonmoving party.[2] Plaintiff Annette Parker is an African-American female who began her employment with defendant in 1989. Beginning in 2000, plaintiff was employed as a dietary aide. The first 25 years of plaintiff's employment passed largely without incident. While the record reflects that plaintiff was disciplined a handful of times between 2001 and 2013, these incidents are undisputedly not pertinent to the resolution of defendant's motion and defendant does not assert that those disciplinary write-ups factored into the decision to terminate plaintiff's employment. Beginning in May 2015, Travis Renfro was defendant's Executive Director. At all times pertinent to this lawsuit, Jeannie Mathews was defendant's Director of Nursing.

Shortly after Mr. Renfro began working as the Executive Director, plaintiff began complaining to him about "situation at nights" and "how the dining room was set up at nights and wasn't properly set up the way it's supposed to be done for me the next day the way I left it for them in the afternoons." According to plaintiff, she told Mr. Renfro that the "white kids" who worked the evening shifts were not properly cleaning and setting up the dining room before leaving each evening. No action was taken with respect to plaintiff's complaints. It is unclear from the record whether plaintiff identified the night-shift workers as "white" when she complained to Mr. Renfro. While plaintiff asserts in her submissions that she complained to Mr. Renfro that "white night workers were not being held the same standard" as plaintiff, the record

---

[2] Defendant, in its reply, moves to strike two affidavits submitted by plaintiff in her opposition to the motion for summary judgment. Those affidavits bear on plaintiff's claim that she was retaliated against for reporting sexual harassment. Because plaintiff's evidence is sufficient to survive summary judgment on this claim even in the absence of those affidavits, the court declines to resolve defendant's objections.

contains no evidence that plaintiff raised concerns about differential treatment between the night-shift workers and plaintiff. Her concern was limited to the condition of the dining room when she arrived for her shift each morning.

On September 15, 2015, Mr. Renfro issued plaintiff a "written counseling" for "negligent job performance by not attending to residents' needs and desires during meal service." According to defendant, the discipline was issued in light of an incident that occurred in the dining room on Friday, September 11, 2015 between plaintiff and a resident. Viewed in the light most favorable to plaintiff, the evidence suggests that a resident seated in the dining room during lunch service had asked another employee for a sandwich. While the resident was waiting for her sandwich, the resident's tablemates had all finished eating lunch. The resident, who had not yet received a sandwich, became upset and told the employee that she wanted ice cream instead of a sandwich. Thereafter, plaintiff brought a sandwich to the resident, who advised plaintiff that she did not want a sandwich. Defendant asserts that the resident reported that both she and plaintiff "were irate" and "that they were both yelling."

On September 18, 2015, a co-worker accused plaintiff of shouting at her to "get the coffee and start passing" during lunch service. On September 22, 2015, plaintiff submitted a written "formal complaint of sexual harassment" to Mr. Renfro in which plaintiff stated that a charge nurse, on September 11, 2015, had pressed her breasts against plaintiff's breasts and then repeated that conduct immediately after plaintiff had pushed her away. In the written complaint, plaintiff states "this is the second time that this has been reported against the same employee." Contrary to defendant's policy concerning the handling of sexual harassment complaints, Mr. Renfro did not share plaintiff's report with defendant's human resources manager. One day

3

later, on September 23, 2015, plaintiff was issued a "Final Warning" for "activity which creates a disruption in the workplace" based on the September 18, 2015 incident. The warning, which was signed by Mr. Renfro, cautioned plaintiff that further violations would result in further disciplinary actions "up to and including termination." On October 5, 2015, Mr. Renfro issued a written response to plaintiff in which he advised her that he had investigated her complaint and that, while it was impossible for him to determine what happened because there were no witnesses to corroborate plaintiff's report or the nurse's denial of that report, he had advised the charge nurse that the reported behavior "is considered sexual harassment."

On November 11, 2015, a resident reported to Ms. Mathews that another resident, Lauren Blundell, was not getting the meals that she wanted during meal service. Ms. Mathews reported this complaint to Mr. Renfro. While the record is unclear as to whether and to what extent Mr. Renfro investigated the incident concerning Ms. Blundell, Mr. Renfro avers that he decided to terminate plaintiff's employment because she violated a company rule "regarding mistreatment of residents" in connection with the incident. Plaintiff testified that Mr. Renfro never asked her about Ms. Blundell. A "potential discharge review" form filled out by Mr. Renfro indicates that a "resident interview" revealed that plaintiff was "being rude" to the resident and that plaintiff "yells a lot when talking to her." Mr. Renfro terminated plaintiff's employment on November 16, 2015.

Additional facts will be provided as they relate to the specific arguments raised by the parties in their submissions.

## II. Summary Judgment Standard

"Summary judgment is appropriate if the pleadings, depositions, other discovery materials, and affidavits demonstrate the absence of a genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Water Pik, Inc. v. Med–Systems, Inc.*, 726 F.3d 1136, 1143 (10th Cir. 2013) (quotation omitted); *see* Fed. R. Civ. P. 56(a). A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Water Pik, Inc.*, 726 F.3d at 1143 (quotation omitted). "The nonmoving party is entitled to all reasonable inferences from the record; but if the nonmovant bears the burden of persuasion on a claim at trial, summary judgment may be warranted if the movant points out a lack of evidence to support an essential element of that claim and the nonmovant cannot identify specific facts that would create a genuine issue." *Id.* at 1143-44.

## III. Retaliation Claims

Title VII makes it unlawful for an employer to retaliate against an employee because he or she has opposed any practice made unlawful by those statutes. 42 U.S.C. § 2000e–3(a). Plaintiff asserts in the pretrial order that defendant terminated her employment in retaliation for reporting "that the white evening employees in the dietary department were not completing their job duties" and/or for reporting "conduct she reasonably believed to be sexual harassment." The court assesses plaintiff's retaliation claims under the *McDonnell Douglas* framework. *Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 638 (10th Cir. 2012). To state a prima facie case for retaliation, plaintiff "must show (1) [s]he engaged in protected opposition to discrimination, (2) a reasonable employee would have considered the challenged employment action materially adverse, and (3) a causal connection existed between the protected activity and the materially

adverse action." *Id*. (quoting *Hinds v. Sprint/United Mgmt. Co*., 523 F.3d 1187, 1202 (10th Cir. 2008)). If plaintiff presents a prima facie case of retaliation, then defendant must respond with a legitimate, nonretaliatory reason for the challenged action. *Debord v. Mercy Health Sys. of Kansas, Inc*., 737 F.3d 642, 656 (10th Cir. 2013). Plaintiff, then, must show that defendant's stated reason is pretextual. *Id*.[3]

In its motion for summary judgment, defendant contends that summary judgment is warranted on plaintiff's retaliation claims because the evidence viewed in the light most favorable to plaintiff demonstrates that she did not engage in protected opposition to discrimination and, in any event, she cannot establish a causal connection between any protected activity and the termination of her employment. Defendant further argues that the record evidence is insufficient to permit a reasonable jury to conclude that defendant's proffered reason for plaintiff's termination is pretextual. Because no reasonable jury could conclude that plaintiff engaged in protected opposition to discrimination when she complained about the employees working the night shift, the court grants summary judgment on that claim. Nonetheless, the court denies summary judgment on plaintiff's claim that she was terminated in retaliation for reporting sexual harassment in light of material factual issues that must be resolved at trial.

Plaintiff first contends that she engaged in protected opposition to race discrimination when she complained to Mr. Renfro about the "white kids" who worked on the evening shift. Defendant contends that summary judgment is warranted because there is no evidence that plaintiff, when she complained about the evening shift employees, made a complaint of race

---

[3] The elements of plaintiff's § 1981 claim are the same. *Carney v. City & County of Denver*, 534 F.3d 1269, 1273 (10th Cir. 2008).

discrimination. The court agrees. There is no evidence in the record that would permit a jury to conclude that plaintiff reported race discrimination or that, when she raised the issue about the evening shift employees, she was conveying a concern that defendant was somehow engaged in an unlawful employment practice. *See Hinds v. Sprint/United Management Co.,* 523 F.3d 1187, 1203 (10th Cir. 2008) ("Although no magic words are required, to qualify as protected opposition the employee must convey to the employer his or her concern that the employer has engaged in a practice made unlawful" by Title VII.). At most, plaintiff's evidence reflects a complaint to her employer that the employees working on the evening shift were not adequately performing their job duties and were making plaintiff's job more difficult. There is no suggestion that plaintiff expressed any concern that defendant was treating those employees more favorably than it was treating plaintiff or that defendant was applying more lenient performance standards to the evening shift employees than it was applying to plaintiff. Because the record is devoid of any evidence that plaintiff raised concerns that defendant was engaged in discrimination based on race, she cannot establish a prima facie case of retaliation on that theory. The court grants defendant's motion for summary judgment on this theory. Moreover, because plaintiff's § 1981 claim is necessarily based only on reports of race discrimination (as opposed to reports of sexual harassment), the court grants summary judgment on plaintiff's § 1981 claim.

Plaintiff next contends that she engaged in protected activity when she reported to Mr. Mr. Renfro on September 22, 2015 that a charge nurse pressed her breasts against plaintiff's breasts two separate times and had engaged in similar conduct previously. In its motion for summary judgment, defendant contends that plaintiff cannot establish protected activity because

the conduct she reported does not, as a matter of law, constitute sexual harassment. But to establish that she engaged in protected activity, plaintiff need not prove that the conduct she complained about constitutes a violation of Title VII. Rather, as plaintiff highlights in her response, she need only establish that she had a reasonable, good faith belief that she was reporting conduct prohibited by Title VII. *See Crumpacker v. Kan. Dep't of Human Res.*, 338 F.3d 1163, 1171 (10th Cir. 2003); *Hertz v. Luzenac Am., Inc.*, 370 F.3d 1014, 1015–16 (10th Cir. 2004). While defendant asserts in its reply brief that plaintiff's belief was not reasonable, the court declines to address that argument because it was not raised in defendant's opening brief. *Lynch v. Barrett*, 703 F.3d 1153, 1160 n.2 (10th Cir. 2013) (court does not consider arguments raised for the first time in reply brief).[4]

Defendant next asserts that summary judgment is appropriate because plaintiff cannot establish a causal connection between her report of sexual harassment and the termination of her employment. In support of this argument, defendant places great weight on the fact that Mr. Renfro testified in his deposition that plaintiff's report did not factor into his decision to terminate plaintiff's employment. Defendant contends that this testimony must be believed because, according to defendant, plaintiff has not refuted Mr. Renfro's testimony in any way. Defendant's argument suggests that plaintiff must come forward with "direct" evidence of a retaliatory motive to establish a causal connection, which is not an accurate statement of the law.

---

[4] Despite defendant's belated assertion that plaintiff's belief was unreasonable, the record reflects that Mr. Renfro believed that the conduct reported by plaintiff constituted sexual harassment, as evidenced in his October 5, 2015 written response to plaintiff. The court cannot say, as a matter of law, that Mr. Renfro's belief was unreasonable in light of plaintiff's report that the charge nurse, on three occasions, had touched plaintiff in a sexual and unwelcome manner.

Rather, a causal connection may be established through evidence of a close temporal proximity between the protected conduct and the adverse action. *See Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1228 (10th Cir. 2008) (holding that close temporal proximity of two weeks between protected activity and termination was "alone sufficient to establish a causal connection"); *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006) (holding that close temporal proximity of twenty-four days between plaintiff's complaint and his termination was sufficient to establish a causal connection).

Plaintiff's evidence that she was given a final written warning, signed by Mr. Renfro, one day after she reported sexual harassment to Mr. Renfro is sufficient to establish the requisite causal connection. While defendant argues that the September 23, 2015 final warning related back to an incident that occurred before plaintiff's report, a jury must resolve whether defendant—given the fact that several days had passed after the incident without disciplinary action—would have issued the warning in the absence of plaintiff's report. Moreover, the fact that plaintiff's employment was not terminated until November 2015 is not fatal to plaintiff's retaliation claim in light of evidence that the termination was tied in part to the final written warning that was issued one day after her report. *See Piercy v. Maketa*, 480 F.3d 1192, 1199 (10th Cir. 2007) (causal connection may be shown where there is evidence that a pattern of retaliatory conduct begins shortly after the plaintiff's protected activity and only culminates later in the termination of the plaintiff's employment). In short, plaintiff has produced enough

evidence to establish a prima facie case of retaliation. This aspect of defendant's motion is denied.[5]

Because plaintiff has satisfied her burden of establishing a prima facie case of retaliation, the court turns to whether defendant has met its burden to articulate a legitimate, nonretaliatory reason for the employment decision. "This burden is one of production, not persuasion; it can involve no credibility assessment." *Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1149 (10th Cir. 2011) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)). The Tenth Circuit has characterized this burden as "exceedingly light," and the court finds that defendant has carried it here. *See id*. According to defendant, Mr. Renfro terminated plaintiff's employment because plaintiff violated several company policies within a two-month period, including negligent job performance and disruption in the workplace. The burden of proof, then, shifts back to plaintiff to show that defendant's proffered reason is pretextual.

Evidence of pretext "may take a variety of forms," including evidence tending to show "that the defendant's stated reason for the adverse employment action was false" and evidence tending to show "that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances." *Carter*, 662 F.3d at 1150 (quoting *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000)). A plaintiff may also show pretext with evidence that the defendant had "shifted rationales" or that it had treated

---

[5] Defendant also urges that plaintiff's evidence is insufficient to demonstrate that her report was the "but for" cause of her termination under the Supreme Court's decision in *University of Texas Southwestern Medical Center v. Nassar*, 133 S. Ct. 2517 (2013). However, the Circuit has recognized that *Nassar* has not altered the burden a plaintiff bears in supporting the causation element of a prima facie case of retaliation because *Nassar* was entirely consistent with the Circuit's precedent on that issue. *See Foster v. Mountain Coal Co.*, 830 F.3d 1178, 1191 (10th Cir. 2016) (citing *Ward v. Jewell*, 772 F.3d 1199, 1203 (10th Cir. 2014)).

similarly situated employees differently. *Crowe v. ADT Servs., Inc.*, 649 F.3d 1189, 1197 (10th Cir. 2011). In essence, a plaintiff shows pretext by presenting evidence of "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *McDonald-Cuba v. Santa Fe Protective Servs., Inc.*, 644 F.3d 1096, 1102 (10th Cir. 2011).

Viewed in the light most favorable to plaintiff, the evidence is sufficient to permit a reasonable jury to conclude that defendant's proffered reason is unworthy of belief. Plaintiff worked for defendant for nearly 25 years and was disciplined only a handful of times. Even after Mr. Renfro began serving as defendant's Executive Director in May 2015, plaintiff worked several months without receiving any disciplinary action. Then, in September 2015, over the course of two months, defendant aggressively escalated progressive discipline against plaintiff. She was disciplined on three occasions (for conduct that, viewed in the light most favorable to plaintiff, was not particularly egregious) and two of those three disciplinary actions came on the heels of her report of sexual harassment. For the foregoing reasons, plaintiff's claim that defendant terminated her employment in retaliation for plaintiff's report of sexual harassment must be resolved by a jury.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion for summary judgment (doc. 67) is granted in part, denied in part and moot in part.

**IT IS SO ORDERED.**

Dated this 27th day of September, 2017, at Kansas City, Kansas.

s/ John W. Lungstrum  
John W. Lungstrum  
United States District Judge